IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                    PLAINTIFF/RESPONDENT

V.                    Case No. 2:13-cr-20069-PKH-MEF-1

VERNICE CHARLES CHRISTIAN                    DEFENDANT/PETITIONER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody filed July 5, 2016.  (Doc. 52)  The United States filed its response on October 3, 2016.  (Doc. 58)  Petitioner did not file a reply.  The matter is ready for Report and Recommendation.

## I. Background

On December 11, 2013, Defendant/Petitioner, Vernice Charles Christian ("Christian"), was named in an Indictment charging him with two counts of distribution of methamphetamine, in violation of 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  (Doc. 1)  Christian was arrested on December 18, 2013, and he appeared before the Hon. James R. Marschewski, U. S. Magistrate Judge, for arraignment on December 20, 2010, at which time Christian entered a not guilty plea to each count of the Indictment.  (Doc. 7)  James B. Pierce ("Pierce"), Assistant Federal Public Defender, was appointed to represent Christian.  (Docs. 7, 9)  Having become aware of a potential conflict of interest, Pierce moved to withdraw on March 4, 2014.  (Doc. 12)  A hearing was held on Pierce's motion on March 5, 2014 (Doc. 13), and by Order entered on that date Pierce was permitted to withdraw, and new counsel, J. Marvin Honeycutt ("Honeycutt"), a CJA panel attorney, was appointed to represent Christian.  (Docs. 14, 15)

-1-

Honeycutt filed discovery motions, including a Motion for Reveal of Confidential Informant and Other Related Matters (Doc. 17), a Notice of Defendant's Request for Rule 404 Material (Doc. 18), and a Notice of Defendant's Request for Discovery (Doc. 19). The motion to compel disclosure of the confidential informant was denied by the Court on April 3, 2014. (Doc. 22) Nevertheless, the Government voluntarily provided the requested information about the confidential informant to Honeycutt. (Doc. 25) As trial approached, Honeycutt filed a Motion in Limine seeking to prevent the Government's anticipated use of Rule 404(b) evidence, and also seeking a cautionary instruction to the jury regarding the Government's anticipated use of transcripts as an aid to audio surveillance. (Doc. 23)

A pre-trial conference was held before the Hon. P. K. Holmes, III, Chief U. S. District Judge, the morning trial was to begin on April 7, 2014. Christian moved to dismiss Honeycutt and obtain new counsel, stating that after a meeting with Honeycutt the prior Thursday, "I feel I need new counsel," "I don't feel that he has my best interests as far as representing me in trial," and "I don't want to go to trial with him." (Doc. 48, p. 13) Christian further stated that Honeycutt had not filed requested motions, had not contacted requested sources to prepare for trial, and had merely attempted to persuade Christian to plead guilty. (Doc. 48, pp. 15-16) When questioned by the Court about the requested motions, Christian explained that he wanted Honeycutt to file something "to fight some of the evidence that they were sending, like a suppression hearing." (Doc. 48, p. 17) Finding that Christian had not provided a justifiable reason to discharge Honeycutt and appoint new counsel, Christian's motion for new counsel was denied, and Christian proceeded to jury trial with Honeycutt representing him. (Doc. 48, pp. 19-21)

Jury trial was held on April 7-8, 2014. The Government presented testimony from the

following witnesses at trial: Cpl. Donnie Ware, the Fort Smith Police Department ("FSPD") investigator who set up three "controlled buys" by a confidential informant ("CI") from Christian (Doc. 48, pp. 87- 124); John Worst ("Worst"), the CI who participated in the three "controlled buys" (Doc. 48, pp. 124-176); three FSPD chain-of-custody witnesses; and, two chemists from the Arkansas Crime Lab. Exhibits introduced by the Government included seven Oxycontin pills, an "eight-ball" of meth, a quarter-ounce of meth, three DVD's of audio/video surveillance of the controlled buys, and chemical analysis reports from the Arkansas Crime Lab chemists. (Doc. 48-1, p. 3) After the Government rested, Honeycutt made a motion for directed verdict, which motion was denied by the Court. (Doc. 48, p. 206) The defense then rested without calling any witnesses. (T. 207) On April 8, 2014, the jury returned verdicts finding Christian guilty of both counts of delivery of methamphetamine as charged in the Indictment. (Docs. 27, 28)

An initial Presentence Investigation Report (PSR) was prepared by the United States Probation Office on June 13, 2014. (Doc. 30) On June 24, 2014, after careful review of the PSR with Christian, Honeycutt advised that Christian had no objections to the initial PSR. (Doc. 31) On June 27, 2014, the Government advised that it had no objections to the initial PSR. (Doc. 32)

On July 25, 2014, a final PSR was submitted to the Court. (Doc. 33) The final PSR determined that Christian was accountable for a total of 6.438 grams of actual methamphetamine and seven oxycodone pills, which when converted to their marijuana equivalent, resulted in a total of 128.767 kilograms of marijuana equivalent. (Doc. 33, ¶¶ 20, 32, 38) That drug quantity resulted in a base offense level of 26. (Doc. 33, ¶ 38) No specific offense characteristics adjustments, victim related adjustments, role in the offense adjustments, or obstruction of justice adjustments were made. (Doc. 33, ¶¶ 39- 42) A Chapter Four enhancement was applied, as Christian was at least 18 years

-3-

old at the time of the offense; the offense of conviction was a felony that was either a crime of violence or a controlled substance offense; and, Christian had at least two prior felony convictions of either a crime of violence or a controlled substance offense. As a career offender, Christian's offense level was enhanced to 32. (Doc. 33, ¶ 44) No reduction was made for acceptance of responsibility, so Christian's total offense level remained at 32. (Doc. 33, ¶¶ 45-46)

Christian's lengthy criminal history resulted in a total criminal history score of 23, placing him in criminal history category VI. (Doc. 33, ¶¶ 67-69) The statutory maximum term of imprisonment for the offense of conviction was 20 years. (Doc. 33, ¶ 99) Based upon a total offense level of 32 and a criminal history category of VI, Christian's advisory guideline range was determined to be 210 to 262 months imprisonment. (Doc. 33, ¶ 100)

Honeycutt filed a Motion for Departure and Variance in which he argued that one of Christian's prior felonies, an aggravated robbery conviction, was committed when Christian was only 15 years old. Honeycutt argued if that prior conviction was not used to enhance Christian's sentence as a career offender, then his guidelines range would be 120 to 150 months imprisonment. (Doc. 35)

Christian appeared for sentencing on September 30, 2014. (Doc. 37) The Court denied Christian's motion for a downward departure, but varied downward from the advisory guidelines range and sentenced Christian to 75 months imprisonment on both counts of conviction, to run consecutively, for a total of 150 months imprisonment, to be followed by three years supervised release, no fine, and imposition of a $200.00 in special assessments. (Doc. 37; Doc. 48, pp. 245, 247-253, 254-255) In its Statement of Reasons, the Court stated its determination that the guideline range was greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a), and that the

-4-

sentence imposed for the two counts of conviction was sufficient when considering the nature and circumstances of the offenses and Christian's history and characteristics.  (Doc. 39, p. 3)  The Court noted the relatively small amount of drugs involved in the two transactions, and that the marijuana equivalency under the guidelines overstated the seriousness of the offenses.  (*Id*.)  The Court further noted that the drug quantity is at a low level in the applicable guideline range for determining the base offense level.  (*Id*.)  The Court commented that Christian's family life "provided little in the way of opportunities," and that his extensive criminal history, while serious, was representative of a low-level drug distributor.  (*Id*.)  The career offender enhancement, the Court concluded, would further overstate the seriousness of his offenses.  (*Id*.)  Judgment was entered by the Court on October 1, 2014.  (Doc. 38)

Christian then timely filed an appeal to the Eighth Circuit Court of Appeals.  (Doc. 41)  In a brief filed under *Anders v. California*, 386 U.S. 738 (1967), Honeycutt argued on appeal that the District Court erred in denying - on the morning of the first day of trial - Christian's motion to appoint new counsel.  In a pro se supplemental brief, Christian argued that the District Court erred in failing to group the two drug counts for sentencing purposes.  (Doc. 51-2, p. 2)  In an Opinion filed on May 12, 2015, the Eighth Circuit affirmed Christian's convictions and sentence.  (Doc. 51-2)  A Mandate was issued on June 2, 2015.  (Doc. 51)

On July 5, 2016, Christian timely filed his *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "motion").  (Doc. 52)  The motion raises two grounds for relief: (1) ineffective assistance of trial counsel for (a) "failure to investigate the facts of the case before the beginning of trial," and (b) "failure to make the court aware of misconduct by the Government for selective (sic) prosecuting Blacks federally;" and, (2)

"[t]he Government engaged in prosecutorial misconduct for selective (sic) prosecuting Petitioner federally, while allowing several Whites with the same charges to be prosecuted in State court." (Doc. 52, pp. 3, 5)

The United States' response in opposition to the motion was filed on October 3, 2016. (Doc. 58) Christian did not file a reply.

## II. Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). A thorough review of Christian's motion, and the files and records of this case, conclusively shows that Christian is not entitled to relief, and the undersigned recommends the denial and dismissal of Christian's § 2255 motion with prejudice without an evidentiary hearing.

### A. Ground One - Ineffective Assistance of Counsel Claims

To prove a claim of ineffective assistance of counsel, Christian must demonstrate both that his counsel's performance was deficient, and that counsel's deficient performance prejudiced his

defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the deficient performance prong of the *Strickland* test, Christian must show that his counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." *Id*. at 688. Review of counsel's performance is deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689. To establish the prejudice prong of the *Strickland* test, Christian must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

### 1. Failure to Investigate Before Trial

In the present case, Christian was represented by experienced appointed counsel, Honeycutt, throughout the criminal proceedings leading to and including jury trial. Honeycutt filed appropriate discovery motions, a pre-trial disclosure sheet, and a motion in limine. (Docs. 17-20, 23) At trial, Honeycutt pointed out credibility issues relating to the use of a paid CI through his cross-examination of both the police investigator (Doc. 48, pp. 115-116) and the CI (Doc. 48, pp. 166-167). He cross-examined both regarding the CI's felony record. (Doc. 48, pp. 115, 173) He emphasized there was no attempt to obtain fingerprints from the items the CI returned to the police. (Doc. 48, pp. 121) A point was made regarding the poor quality of the audio/video surveillance from the controlled buys. (Doc. 48, pp. 170) Honeycutt argued to the jury that the evidence of the first controlled buy, involving oxycodone, was not charged in the Indictment and was only presented to bolster "two really bad cases." (Doc. 48, p. 225) He vigorously argued the CI's felony record and lack of credibility; the failure to even attempt to identify Christian's fingerprints on the drug evidence; the failure to present any of the recorded buy-money; the fact that there were no hand-to-

hand transactions; and, that the CI was Christian's next-door neighbor and had access to the areas where he claimed the drugs were obtained. (Doc. 48, pp. 225-228) The record demonstrates Honeycutt had a clear understanding of the facts at trial, and that he advocated well on Christian's behalf. By its verdicts, the jury chose to believe the CI's testimony regarding the two controlled purchases of methamphetamine from Christian.

Christian faults Honeycutt for failing to talk to the CI and the Federal Public Defender's investigator (who had talked to the CI) before trial. (Doc. 52, p. 11) Christian learned from James Pierce, his first appointed counsel, that Worst was the CI and was going to testify against him. (Doc. 52, p. 12) Christian alleges he learned from his mother[1] that Worst "was not going to testify against him about any purchase of methamphetamine, because, according to Worst, he had not purchased any methamphetamine from [Christian]." (*Id*.) Christian says that upon learning this, he contacted Pierce's investigator, Raphael Marquez ("Marquez"), and told him what Worst said. (*Id*.) Christian then alleges that approximately two weeks later, Worst was arrested and placed in the same county jail with Christian; that they communicated with each other by exchanging several messages; and, that "Worst volunteered his willingness to give a statement on Petitioner's behalf." (Doc. 52, p. 13) This information was provided to Marquez, and Marquez talked to Worst while Worst was in the county jail. (*Id*.) Shortly thereafter, Pierce withdrew due to a conflict of interest.[2] Honeycutt was then appointed to represent Christian (Doc. 14), and Christian alleges he informed Honeycutt about

_____

[1] As reported in the PSR, Christian's mother has a lengthy criminal history involving drugs and guns, and Christian himself reported that she "sold drugs all of her life." (Doc. 33, ¶ 77)

[2] The Federal Public Defender's Office in which Pierce worked had previously represented Worst. (Doc. 48, pp. 2-3; Doc. 52, p. 13)

the information Marquez had on Worst.  (Doc. 52, p. 13)  Christian further alleges that Honeycutt never talked to either Marquez or Worst, allegedly stating on one occasion that "he was not going to talk to Worst, because he did not want Worst to be charged with perjury."  (*Id*.)

Christian's argument fails because Worst did testify at trial – only instead of testifying that he never bought methamphetamine from Christian, Worst testified that he cooperated with the FSPD to make two controlled purchases of methamphetamine from Christian.  Honeycutt cross-examined Worst to elicit testimony regarding Worst's felony record, and that he was paid $100.00 by the FSPD for each transaction, in an effort to undermine Worst's credibility.  Honeycutt further cross-examined Worst to obtain testimony that Worst lived next door to Christian, and that there was no hand-to-hand exchange of money for drugs between them, from which information the jury might infer that Worst planted the drugs he found and returned to the police.  Worst certainly had an opportunity at trial to explain that he did not purchase methamphetamine from Christian on October 31 and November 7, 2013, but he did not do so.

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  *Francis v. Miller*, 557 F.3d 894, 901 (8th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690-91).  Counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Whitmore v. Lockhart*, 8 F.3d 614, 618-19 (8th Cir. 1993) (quoting *Strickland*, 466 U.S. at 691).  In the present case, Honeycutt clearly understood that Christian *believed* Worst was willing to provide a favorable statement; but, even taking Christian's allegation that Honeycutt "did not want Worst to be charged

with perjury" at face value, Honeycutt's decision not to speak with Worst before trial was clearly a strategic decision. This is not a case in which a decision was made when counsel was completely unaware of vital information. Even if counsel's better course might have been to speak with Worst before trial to confirm his anticipated testimony, the undersigned cannot say that the failure to do so fell short of the "wide range of professionally competent assistance." *See Strickland*, 466 U.S. at 690. Worst was not an uncalled witness whose potential testimony could have exonerated Christian; instead, he was called to testify at trial, by the Government, and his testimony was that Christian sold him methamphetamine on October 31 and November 7, 2013.

Since Petitioner has failed to show that his counsel's performance was deficient regarding this issue, there is no need to address the second *Strickland* prong of prejudice. *See United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003) (if a movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an ineffective assistance claim). Even so, Christian has failed to demonstrate any prejudice from counsel's failure to talk to the CI or Marquez before trial. "To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony 'would have probably changed the outcome of the trial.'" *Hadley v. Groose*, 97 F.3d 1131, 1135 (8th Cir. 1996) (quoting *Stewart v. Nix*, 31 F.3d 741, 744 (8th Cir.1994)). Worst did testify at trial; and, Christian does not assert, nor has he shown, but for counsel's failure to speak to either Worst or Marquez before trial that Worst's trial testimony would have been any different, or that the outcome of the trial would have probably been different.

## 2. Failure to Notify Court of Prosecutorial Misconduct

Christian also alleges that Honeycutt provided ineffective assistance of counsel "for his

failure to make the Court aware of the misconduct by the Government for selective (sic) prosecuting

Blacks, situated as Petitioner, while allowing Whites to be prosecuted by the State where they faced

less time. (Doc. 52, p. 15) Specifically, Christian claims that he informed Honeycutt before trial that

several whites were not being charged federally, even though they had similar offenses that had been

initiated by the same CI. (*Id.*) Christian alleges that Honeycutt neither informed the Court nor

investigated his complaint of selective prosecution.

For the reasons discussed below regarding Ground Two, Christian's claim of selective

prosecution lacks merit, and Honeycutt cannot be faulted for failing to raise an unmeritorious claim.

The failure to raise a claim that lacks merit does not constitute ineffective assistance of counsel.

*Larson v. United States*, 833 F.2d 758, 759 (8th Cir. 1987) (citing *United States v. Johnson*, 707 F.2d

317, 323 (8th Cir. 1983)). *See also Thomas v. United States*, 951 F.2d 902, 904 (8th Cir. 1991)

(failure to raise meritless selective prosecution claim was not ineffective assistance).

### B.  Ground Two - Selective Prosecution Claim

Christian's second ground for relief is his claim that "[t]he Government engaged in

prosecutorial misconduct for selective (sic) prosecuting [him] federally, while allowing several

Whites with the same charges to be prosecuted in State court." (Doc. 52, pp. 15-16) For supporting

facts, Christian alleges "the same CI was used to make controlled buys from Petitioner and the

Whites; the same agency investigated Petitioner and the Whites; the CI purchased similar amounts

of meth from Petitioner and the Whites; and, the Whites and Petitioner had similar criminal history."

(Doc. 52, p. 16) Christian alleges he was charged in federal court, while "the Whites were charged

and prosecuted by State authorities." (*Id.*) The United States argues that Christian fails to offer any

proof, or even to allege specific facts, to support his claim of selective prosecution. (Doc. 58, pp.

10-13)  The United States further argues that Christian is procedurally barred from raising this claim.
(Doc. 58, pp. 13-16)

### 1.  Selective Prosecution Claim Lacks Merit

In order to make out a prima facie case of selective prosecution, a defendant must show: (1) that he was singled out for prosecution while others similarly situated were not prosecuted for similar conduct; and, (2) that the decision to prosecute was based on an impermissible motive such as race, religion, or an attempt by the defendant to secure other constitutional rights.  *United States v. Huff*, 959 F.2d 731, 735 (8th Cir. 1992), *cert. denied*, 506 U.S. 855 (1992).  The defendant bears the burden of proof on a selective prosecution claim.  *Id*. (citing *United States v. Holmes*, 794 F.2d 345, 347 (8th Cir. 1986)).  The burden of proof is a "demanding one."  *United States v. Armstrong*, 517 U.S. 456, 463 (1996).  Christian has failed to meet that burden.

The Government correctly notes that a presumption exists "that a prosecution for violation of a criminal law is undertaken in good faith and in nondiscriminatory fashion for the purpose of fulfilling a duty to bring violators to justice."  *United States v. Ojala*, 544 F.2d 940, 943 (8th Cir. 1976) (quoting *United States v. Falk*, 479 F.2d 616, 620 (7th Cir. 1973)).  The Government retains broad discretion in determining whom to prosecute, and "the decision to prosecute is particularly ill-suited to judicial review."  *Wayte v. United States*, 470 U.S. 357, 607 (1985).  As the Supreme Court discussed in *Wayte*, there are numerous factors that are part of the calculus of prosecutorial decisions, all of which make the courts properly hesitant to examine the decision whether to prosecute.  *Wayte*, 470 U.S. at 607-08.

Christian's anecdotal and conclusory allegations regarding the existence of three "similarly situated" white inmates he became acquainted with in jail are insufficient.  While Christian generally

-12-

alleges that Worst had been used as a CI to make controlled purchases of small amounts of methamphetamine from the three white inmates; that they had criminal histories similar to his; and, that the white inmates were all prosecuted in State court while he, a black man, was prosecuted federally, there is no substance behind these allegations. Christian does not allege any specifics to demonstrate that these three white inmates were, in fact, similarly situated to him. There are no allegations regarding the specific drug quantities involved; the number of controlled purchases each white inmate made; the specific nature of each white inmate's criminal history; or, regarding any of the other considerations identified in *Wayte*. Christian presents no sworn affidavits from any of the three white inmates, no court records relating to their alleged state prosecutions, and no court records of their allegedly similar criminal histories. Nor does Christian present evidence that other similarly situated defendants of other races could have been prosecuted in federal court, but were not.

Finally, Defendant presents no evidence to demonstrate any discriminatory intent. Conclusory assertions of discriminatory motive, without supporting facts, are "wholly insufficient to support [a] claim of selective prosecution." *United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004). Christian alleges no racially-motivated comments by anyone associated with the investigation or prosecution. He presents no statistical data to show that non-African Americans were not being prosecuted in federal court for similar methamphetamine offenses. Nor has Christian referred to anything in the record in an effort to show that the Government singled him out for federal prosecution on the basis of his race.

Christian has failed to satisfy the demanding burden of proving the two elements of a prima facie case of selective prosecution. His claim of selective prosecution is subject to summary dismissal.

-13-

### 2.  Selective Prosecution Claim is Procedurally Defaulted

The United States Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982) (internal citations omitted).  Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

In this case, Christian did pursue relief on direct appeal.  He argued that this Court erred in denying his motion, made the morning trial was set to begin, for appointment of new counsel, and in grouping two drug counts together for sentencing purposes.  *United States v. Christian*, 603 F.App'x 521 (8th Cir. 2015).  Christian could have challenged that he was subjected to selective prosecution on direct appeal.  He did not.  He was clearly aware of the potential claim, having alleged that he informed Honeycutt before trial that several whites were not being charged federally, even though they allegedly had similar offenses initiated by the same CI.  (Doc. 52, p. 15)  He also addressed the issue in his comments to the Court at sentencing.  (Doc. 48, p. 239)  By failing to present the issue in his direct appeal, Christian procedurally defaulted the claim.

This procedural default may be excused only if Christian "can show both (1) a cause that excuses the default, and (2) actual prejudice from the errors that are asserted." *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997) (quoting *Bousley v. Brooks*, 97 F.3d 284, 287 (8th Cir. 1996)); *Apfel*, 97 F.3d at 1076; and, *Frady*, 456 U.S. at 167-68.  "For cause to exist, the external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499

U.S. 467, 497 (1991).

Christian makes no such showing here. He fails to demonstrate how the factual or legal basis for his selective prosecution claim was not reasonably available to him in time to pursue relief on direct appeal. Further, there is no assertion by Christian that some interference by the Government, or some external impediment, prevented him from raising his selective prosecution claim in the trial court or on direct appeal.

Since Christian has not shown adequate cause to overcome the procedural bar in his case, the Court need not consider the issue of actual prejudice. *Ashker v. Class*, 152 F.3d 863, 871 (8th Cir. 1998) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982)). Even so, Christian has presented absolutely no new, reliable evidence to support his claim. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup v. Delo*, 513 U.S. 298 (1995).

Christian has failed to demonstrate "cause and prejudice" or a "miscarriage of justice" to overcome the procedural default of the selective prosecution claim he now asserts, and his § 2255 motion should be dismissed.

### C. No Evidentiary Hearing is Warranted

A petitioner is entitled to an evidentiary hearing on a habeas motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief. *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 835-36 (8th Cir. 2005) (citing 28 U.S.C. § 2255). No evidentiary hearing is required, "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Watson v. United States*, 493 F.3d 960, 963 (8th Cir.

2007); *Anjulo-Lopez v. U.S.* 541 F.3d 814, 817 (8th Cir. 2008). Those are the circumstances in this case. Resolution of Christian's claims can be accomplished by reviewing the record and applicable law. A thorough review of Christian's § 2255 motion, the files and records of this case, and applicable law, shows that Christian is entitled to no relief. Accordingly, the undersigned recommends the summary dismissal of Christian's § 2255 motion without an evidentiary hearing.

### D. No Certificate of Appealability is Warranted

A Certificate of Appealability may issue under 28 U.S.C.§ 2253 only if the applicant has made a substantial showing of the denial of a constitutional right. A "substantial showing" is one demonstrating that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented deserved further proceedings even though the petitioner did not prevail on the merits in the court considering his case at present. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

In the present case, and for the reasons stated above, the undersigned finds that there is no substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

### III. Conclusion

For the reasons and upon the authorities discussed above, Christian's claims are not supported by the record in this case. I recommend that Christian's motion, filed under 28 U.S.C. § 2255, be **DISMISSED with PREJUDICE** without an evidentiary hearing. I further recommend that a request for a Certificate of Appealability be denied.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely**

**written objections may result in waiver of the right to appeal questions of fact.  The parties are**

**reminded that objections must be both timely and specific to trigger de novo review by the**

**district court.**

DATED this 20th day of March, 2017.

/s/ Mark E. Ford

HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE